836 F.2d 546
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James Lawrence MCKENNA, Plaintiff-Appellant,
Ariadna R. McKenna, Bonnie Harris McKenna, Lynchburg Machine
Works, Inc., a Virginia corporation, Plaintiffs,
v.
SOVRAN BANK NA, Community Bank, a California bank,
Defendant-Appellee. Third Party Defendant
Bonnie Harris MCKENNA, Plaintiff-Appellant,
Ariadna R. McKenna; James Lawrence McKenna; Lynchburg
Machine Works, Inc., a Virginia corporation, Plaintiffs,
v.
SOVRAN BANK NA, Community Bank, a California Bank,
Defendant-Appellee. Third Party Defendant
James Lawrence MCKENNA, Plaintiff-Appellant,
Ariadna R. MCKENNA, Bonnie Harris McKenna, Lynchburg Machine
Works, Inc., a Virginia corporation, Plaintiffs,
v.
Community Bank, a California Bank, Defendant-Appellee,
Sovran Bank NA, Defendant & Third Party Plaintiff.
 Nos. 86-1228-1230.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 3, 1987.
Decided Dec. 23, 1987.
 
 Dennis Patrick Lacy, Jr. (John A. Gibney, Jr., Lacy & Mehfoud, P.C. on brief) for appellants.
 Samuel James Thompson (Leighton S. Houck, Caskie & Frost on brief), Bernard Coleman Baldwin, III (Bevin R. Alexander, Jr., Edmunds & Williams on brief) for appellees.
 Before JAMES DICKSON PHILLIPS and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is an appeal from an order, entered pursuant to Fed.R.Civ.P. 37(d), dismissing the claims of James and Bonnie McKenna and entering default judgments against them on a counterclaim, for their failure to comply with discovery obligations. Because we believe the district court neither abused its discretion nor violated due process in imposing these sanctions, we affirm.
 
 
 2
 * James McKenna and his sister Ariadna are the officers and directors, as well as sole shareholders, of Lynchburg Machine Works (LMW), a small Virginia corporation now in bankruptcy proceedings. In October 1983, LMW obtained a line of credit from Sovran Bank, evidenced in part by two demand notes which were personally guaranteed by James, Ariadna, and James's wife Bonnie. As partial security for these notes, LMW obtained a standby letter of credit, naming Sovran as beneficiary, from Community Bank. James McKenna is personally liable to Community on the letter of credit.
 
 
 3
 When the line of credit expired in October 1984, Sovran had advanced LMW approximately $130,000 under it. In December 1984, Sovran demanded payment of that amount from LMW and the three McKennas, who had guaranteed LMW's debt. LMW and Ariadna immediately filed an action in Virginia state court to enjoin Sovran's collection efforts, which they claimed were in breach of an oral contract to extend the loan period allegedly entered into by Ariadna and a Sovran representative. In late December 1984, the state court denied LMW's request for preliminary injunctive relief.
 
 
 4
 Several weeks later, James McKenna filed an action in California state court against Sovran and Community, seeking to prevent Sovran from drawing on the letter of credit, which he alleged that Sovran had obtained by means of fraudulent misrepresentations. On April 9, 1985, the California state court issued a preliminary injunction restraining Sovran from drawing on the letter of credit.
 
 
 5
 On April 30, 1985, Sovran removed LMW's state court action in Virginia to the federal district court in the Western District of Virginia, where LMW's petition in bankruptcy was pending. James and Bonnie McKenna joined the federal action as voluntary plaintiffs, represented by the same counsel as LMW and Ariadna. Sovran filed a counterclaim on the notes against LMW and the three McKennas, joining Community, whose letter of credit secured the notes, as a co-defendant. Community counterclaimed against LMW and James for any amounts that it might be compelled to pay Sovran under the letter of credit.
 
 
 6
 The Virginia action was plagued by delay almost from the moment of removal. The action was originally scheduled to be tried in early April 1986. In December 1985, however, the district court was forced to postpone the trial until May 1986. In April 1986, the McKennas sought a second continuance of the trial. The district court granted this request, over the objection of Sovran, and rescheduled the trial for August 13-15, 1986.
 
 
 7
 Sovran then began to experience difficulty obtaining discovery. James, Bonnie, and Ariadna filed incomplete answers to interrogatories and refused to comply with requests to produce their federal income tax returns, and LMW failed altogether to respond to interrogatories and requests for production of documents. On April 28, 1986, Sovran filed a motion to compel, which included a request for sanctions against LMW and the three McKennas. The district court ordered the plaintiffs to produce the tax returns, but declined to impose sanctions. On June 6, Ariadna failed to appear for her deposition. Her proffered excuse for this failure was that the McKennas' attorney had suddenly decided to withdraw from the case. On June 16, Sovran moved for sanctions against Ariadna. On June 20, the district court granted counsel's request to withdraw, ordered the McKennas to obtain replacement counsel by July 7, and ordered Ariadna to appear for deposition on July 25.
 
 
 8
 The July 7 deadline came and went without the McKennas obtaining replacement counsel or asking the court for an extension of time in which to do so. On July 18, Sovran filed a third motion for sanctions, which specifically included a request for dismissal of the McKennas' claims and the entry of default judgment against them on Sovran's counterclaim. This motion, which gave rise to the orders under review, was based on the McKennas' complete failure to respond to a set of interrogatories and requests for document production served on June 16, 1986. At the same time, Sovran asked the district court to dissolve the California court's preliminary injunction against them, to enjoin further prosecution of the California action, and to order Community to pay Sovran under the letter of credit. The district court set the hearing on Sovran's motion for July 31, and Sovran sent each of the McKennas notice of the hearing by certified mail.
 
 
 9
 On July 21, seven weeks after the McKennas learned that their counsel was withdrawing and two weeks after the district court's deadline for obtaining replacement counsel, James informed the district court that they had not yet secured replacement counsel. As justification for this delay, he said that the first lawyer he had approached was unable to take the case for conflict-of-interest reasons, and that the second could not decide whether to take it without conferring with the first, who was "away on extended vacation." In view of these "problems," James asked the court to postpone all proceedings in the case until further notice from him.
 
 
 10
 On July 25, Ariadna again failed to appear for her deposition, in defiance of the district court's order. Sovran filed an amendment to its July 18 motion for sanctions apprising the district court of this development. On July 31, the district court held the scheduled meeting on Sovran's motion for sanctions and orally granted the relief requested, including an order directing Community to pay Sovran under the letter of credit. The McKennas did not appear for the hearing.
 
 
 11
 On August 8, four days before trial was scheduled to begin, James again wrote to the district court to offer an explanation for the McKennas' failure to obtain replacement counsel: this time, he said, it was because the second lawyer was away on vacation. Once again, James asked the district court to delay the proceedings until further notice from him. The district court denied this request, on the grounds that the McKennas had had more than ample time in which to obtain replacement counsel.
 
 
 12
 On August 11, the district court entered an order dismissing with prejudice the claims of LMW and the three McKennas and entering default judgments against them on Sovran's counterclaim. On August 15, the district court entered judgment against the McKennas on Community's counterclaim.
 
 
 13
 Two of the four plaintiffs, James and Bonnie, here appeal the imposition of these sanctions against them.[1] They do not challenge the portion of the district court's order that dissolved the California injunction, enjoined further prosecution of the California action, and ordered Community to let Sovran draw on the letter of credit. The sole question presented by this appeal, therefore, is the propriety of the district court's imposition of these particular sanctions.
 
 II
 
 14
 On appeal, James and Bonnie concede that they failed to respond at all to Sovran's June 16 request for interrogatories and production of documents, and that the district court had authority, under Fed.R.Civ.P. 37(d), to impose sanctions upon them for this noncompliance. They argue, however, that the district court abused its discretion in imposing the peculiarly harsh sanctions of dismissal and default against them.
 
 
 15
 Fed.R.Civ.P. 37 gives the district court wide discretion to impose sanctions for failure to comply with discovery orders. In exercising its discretion to select sanctions appropriate to the particular violation, however, the district court should consider four factors: (1) whether the noncomplying party acted in bad faith: (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. See generally Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 503-06 (4th Cir.1977); 8 C. Wright and A. Miller, Federal Practice and Procedure: Civil Sec. 2284 (1970 & Supp.1987). In general, the drastic sanctions of dismissal and default are appropriate only where the noncomplying party's conduct represents such flagrant bad faith and callous disregard for his obligations under the Rules that the sanctions are warranted not merely to prevent prejudice to his current adversary, but also to deter those who might be tempted, in the future, to engage in similar misconduct. See Wilson, 561 F.2d at 504. Applying this analysis to the instant case, we conclude that the district court did not abuse its discretion in entering those sanctions here.
 
 
 16
 At the outset, the McKennas argue that the district court did not articulate the basis for its decision sufficiently to allow a meaningful appellate review, and that we should therefore remand for further findings of fact. We do not agree. While we indicated in Wilson that the district court should clearly state its reasons for imposing sanctions, 561 F.2d at 505, we believe the district court complied with that directive in this case. Its order identified the specific acts of misconduct that led it to impose sanctions, and made specific findings that those actions had been undertaken in bad faith:
 
 
 17
 It appear[s] to the Court that Ariadna R. McKenna, James Lawrence McKenna, Bonnie Harris McKenna, ("the McKennas"), and Lynchburg have all failed within the time permitted by law to answer to interrogatories and to respond to the motion to produce documents served upon them by Sovran, and that said failure was willful, deliberate, and without just cause; and ... that Ariadna R. McKenna, who is also president of Lynchburg, has failed to appear and submit to a duly-scheduled deposition as ordered by this Court ..., and that her failure was willful, deliberate, and without just cause, and in direct violation of this Court's order; and ... that the McKennas and Lynchburg have failed to obtain new counsel within the time limits of this Court's order....
 
 
 18
 We believe this order made the reasons for the district court's decision sufficiently clear that remand is unnecessary.
 
 
 19
 The McKennas claim that, while they did fail to respond in any fashion to Sovran's June 16 discovery request, the record contains no evidence that they acted willfully or in bad faith in doing so. The district court specifically rejected that argument, finding instead that their failure to comply had been "willful, deliberate, and without just cause." Such an express finding of fact can, of course, be overturned on appeal only if clearly erroneous. See Rabb v. Amatex Corp., 769 F.2d 996, 1000 (4th Cir.1985). Upon review, we think this finding was fully supported by the evidence, for the record reveals that this was not an isolated incident of noncompliance, but rather part of a larger pattern of deliberate dilatory behavior.
 
 
 20
 The problems in this action begin, coincidentally enough, when the California court issued the injunction prohibiting Sovran from drawing on the letter of credit. Since the stay in bankruptcy prevented Sovran from collecting the debt from LMW itself, this meant that Sovran's only hope of recovery on the notes was its counterclaim against the McKennas, as guarantors, in this action. Cognizant of Sovran's dilemma, the McKennas embarked upon a course of conduct whose objective was to postpone payment of the debt by delaying resolution of Sovran's counterclaim. During the year following the issuance of the California injunction, the McKennas sought and obtained two continuances of the trial itself; changed counsel two times; failed to respond fully to one set of interrogatories and failed altogether to respond to another; failed to respond to requests for production of their tax forms, until ordered to do so by the court; and blatantly defied the court's orders to obtain counsel so that discovery could proceed. Indeed, it was only when the district court dissolved the California injunction in August 1986, which permitted Sovran to draw on the letter of credit and meant that Community would soon be knocking at the McKennas' door for reimbursement, that the McKennas regained interest in prosecuting this action. Viewed against this background, we do not think the district court's finding that the McKennas were acting in bad faith when they failed to respond to the last set of interrogatories and requests for production of documents can be termed clearly erroneous.[2]
 
 
 21
 The McKennas suggest that their failure to respond to the June 16 discovery requests cannot serve as the basis for the imposition of these sanctions, because it was due to their lack of counsel, rather than to any "fault" on their part. The Supreme Court has held that the severe sanctions of dismissal and default may not, consistent with the due process clause, be imposed upon a party whose failure to comply is due to inability to do so, rather than to any willfulness, bad faith, or other "fault" on his part. Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 208-13 (1958). We believe, however, that the district court could properly consider the McKennas' asserted "inability" to secure replacement counsel simply another ruse to delay this action. Their counsel asked to withdraw, significantly, on the eve of the deposition of their key witness, Ariadna. The district court granted his request, rescheduled the deposition, and gave the McKennas more than a month to secure replacement counsel. The McKennas not only failed to meet that deadline, but also neglected to ask the district court for an extension of time in which to do so or, indeed, to communicate with it in any fashion before the expiration of the deadline. Their efforts to obtain replacement counsel were feeble at best: taking them at their word, they contacted only two attorneys, and when the first declined to take the case, they waited almost six weeks for the second to make up his mind, without making any alternative arrangements. On these facts we conclude that the imposition of sanctions upon them for their failure to respond to the June 16 discovery requests does not offend the constitutional principles set forth in Society Internationale.
 
 
 22
 The McKennas also claim that their noncompliance did not prejudice Sovran, because the evidence they failed to produce was not material to Sovran's case. This argument is without merit. In its June 16 interrogatories and request for production of documents, Sovran sought information related to the financial health of LMW and its principals. Because this information was critical to Sovran's primary defense to the McKennas' breach-of-contract claim--that the McKennas had obtained the loan by means of false financial information--the McKennas' nonproduction surely prejudiced Sovran.
 
 
 23
 The McKennas argue finally that the district court could have obtained their compliance by means of less drastic sanctions. To be sure, the court could have conditioned the judgments of dismissal and default upon the McKennas' failure to comply fully before a certain date, and before National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639 (1976), there might have been a credible argument that its failure to do so was an abuse of discretion. In National Hockey League, however, the Supreme Court made clear that the severe sanctions of dismissal and default "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Id. at 643. Mindful of this mandate, we are reluctant to overturn the district court's on-the-scene assessment that the sanctions of dismissal and default entered here were necessary to compel compliance with its rules, either in this case or in future cases. As the Supreme Court has noted, "[t]he question, of course, is not whether ... the Court of Appeals would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing." National Hockey League, 427 U.S. at 642. In view of the long history of dilatory conduct disclosed by this record, we conclude that it did not.
 
 
 24
 The judgment of the district court is therefore affirmed.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 Ariadna and LMW have not appealed the judgments against them
 
 
 [2]
 James and Bonnie argue that much of the misconduct that formed the basis for the district court's imposition of these sanctions is attributable to Ariadna, for whose misdeeds they cannot properly be held responsible. This argument is based, presumably, upon the district court's reference to Ariadna's deposition-skipping in its order imposing sanctions upon all three McKennas. We think this argument is without merit. The specific act of noncompliance which led to the imposition of these sanctions upon James and Bonnie was their failure to respond to the June 16 discovery requests, not Ariadna's missed depositions. Her misconduct was, however, relevant to the question of bad faith, for it tended to show that the three McKennas were involved in a joint effort to obstruct and delay these proceedings. As such, it was properly considered